# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| HEATHER OSMUN, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO. 1:16-cv-00273-SLC |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Heather Osmun appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB").[1]  For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.

## I. BACKGROUND

In February 2013, Osmun filed an application for DIB, alleging disability as of February 10, 2012.  (DE 9 Administrative Record ("AR") 15, 166-67).  Osmun's application was denied initially and upon reconsideration.  (AR 116-19, 123-25).  At Osmun's request, a hearing was held before Administrative Law Judge Terry Miller (the "ALJ") on October 28, 2014.  (AR 38-92, 126-27).  At the hearing, Osmun who was represented by an attorney, and vocational expert Charles McBee testified.  (AR 38).  On December 24, 2014, the ALJ issued an unfavorable decision, finding that Osmun was not disabled.  (AR 10-30).  Osmun requested that the Appeals

---

[1] All parties have consented to the Magistrate Judge.  (DE 12); *see* 28 U.S.C. § 636(c).

Council review the ALJ's decision (AR 5-9), and the Appeals Council denied her request, making the ALJ's decision the final, appealable decision of the Commissioner (AR 1-4).

Osmun filed a complaint with this Court on July 14, 2016, seeking relief from the Commissioner's final decision. (DE 1). In her appeal, Osmun alleges that the ALJ: (1) did not assign appropriate weight to the opinion of Osmun's treating physician, Karen Evans, M.D., in the residual functional capacity ("RFC") determination; (2) failed to appropriately consider whether Osmun had a combination of impairments that medically equals a listing at step three; (3) failed to consider evidence of Osmun's obesity in the RFC determination; (4) did not appropriately consider evidence of Osmun's mental limitations in the RFC determination; and (5) erroneously determined that Osmun's symptom testimony was not credible. (DE 13 at 14-25).

## II. THE ALJ's FINDINGS

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether Osmun is disabled as defined by the Act, the ALJ conducted the familiar five-step analytical process, which required him to consider the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the

2

impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[2] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id*. The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Id*. at 885-86.

At step one, the ALJ found that Osmun had not engaged in substantial gainful activity since her alleged onset date of February 10, 2012. (AR 15). At step two, the ALJ found that Osmun had the following severe impairments: fibromyalgia, mylagias, or myositis; history of psuedotumor cerebri or idiopathic intracranial hypertension with related headaches or vertiginous migraines; chronic papilledema causing blurry vision; hypothyroidism; obesity; anxiety; and depression. (AR 15-16).

At step three, the ALJ concluded that Osmun did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 16-18). Before proceeding to step four, the ALJ determined that Osmun's symptom testimony was "not entirely credible" (AR 20), and assigned her the following RFC:

> [T]he claimant has the [RFC] to perform sedentary work . . . further limited as follows: She requires a sit/stand option, allowing her to alternate between sitting and standing up to every 30 minutes, if needed. The positional change will not render her off-task. She can never climb ladders, ropes, or scaffolds. She can

---

[2] Before performing steps four and five, the ALJ must determine the claimant's RFC, or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(5).

> occasionally climb ramps or stairs, balance, stoop, crouch, or crawl. She can perform no close visual work, meaning she can perform only occasional near acuity, as required. She needs to avoid concentrated exposure to loud noise and bright and flashing lights. She needs to avoid concentrated exposure to hazards, defined as operating control of dangerous moving machinery, working at unprotected heights and around slippery, uneven, or moving surfaces. Mentally, she cannot perform tasks requiring intense or focused attention for prolonged periods. She can only occasionally work in close proximity to others to minimize distractions. She can have only casual, superficial interactions with others, including supervisors, coworkers, and the general public. She can occasionally interact with the general public.

(AR 19). Based on this RFC, the ALJ found at step four that Osmun could not perform her past relevant work. (AR 24-25). The ALJ considered the testimony of the vocational expert and other evidence in the record and determined at step five that Osmun could perform other jobs in the national economy that exist in significant numbers, and therefore, her application for DIB was denied. (AR 25-26).

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative

record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id*. Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Id*. Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Id*. (citing *Ehrhart v. Sec'y of Health & Human Servs*., 969 F.2d 534, 538 (7th Cir. 1992)).

### IV. ANALYSIS

To begin, Osmun contends that the RFC assessment is flawed because the ALJ assigned little weight to Dr. Evans's opinions without sufficient justification. The Seventh Circuit Court of Appeals has stated that "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. § 404.1527(c)(2). However, this principle is not absolute, as "a treating physician's opinion regarding the nature and severity of a medical condition is [only] entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford*, 227 F.3d at 870 (citing 20 C.F.R. 404.1527(d)(2)); *see Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002). The Commissioner must always give good reasons for the weight ultimately applied to the treating source's opinion. *Clifford*, 227 F.3d at 870; 20 C.F.R. § 404.1527(c)(2).

The RFC is "the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996); *see Young v. Barnhart*, 362 F.3d 995, 1000-02 (7th Cir. 2004) (citations omitted); 20 C.F.R. § 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations."). The RFC assessment "is based upon consideration of all relevant evidence in the case record, including medical evidence and

relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence." SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. § 404.1545.

At the administrative hearing, Osmun testified that she was working towards an associate's degree in culinary arts by attending courses four days a week (taking 12 credit hours a semester) at Ivy Tech Community College. (AR 47-48). She stated, however, that on bad days she would be unable to attend classes. (AR 58, 64). Osmun testified that her teachers allowed her special accommodations, such as taking "breaks every 15 minutes or so at school to go sit down" if she was standing, or allowing her to leave early. (AR 48-49). Osmun testified that sometimes her body shakes so severely that she cannot chop things or use a knife. (AR 67).

Osmun testified that she can walk from her car to the classroom, and that she sometimes uses a cane or wheelchair, although no doctor prescribed either device. (AR 69-70). She needs to take a break from standing about every 15 minutes, and has "more difficulty" sitting because it causes pain in her hips. (AR 69-70). Osmun estimated that she could pick up "about 10 pounds, if that," and that once she grabs something she has a tendency to drop it. (AR 70).

Osmun testified that she tries to do the dishes, the laundry, and the dusting; but she cannot vacuum, mop, sweep the floors, or do the gardening. (AR 75-76). Osmun can feed but not walk her dog. (AR 77). She does not bathe on a regular basis because it requires considerable energy. (AR 77). Her husband and children help her with the cooking, and on a good day she can walk the aisles in the grocery store, but on a bad day she uses a wheelchair or scooter. (AR 77-78). She has trouble using a keyboard because it "tends to cause a lot of pain

6

throughout the fingers and up the arms." (AR 71). Osmun completed a "Function Report" in February 2013, but did not indicate that her symptoms or conditions affect her "reaching." (AR 213).

Turning to the relevant medical evidence of record, beginning in October 2009, Dr. Evans treated Osmun every one to three months, and examined her nine times between February 2012 and June 2013. (AR 298-309, 347-52, 408-12). On June 21, 2013, Dr. Evans completed a "Fibromyalgia Syndrome Medical Assessment Form," and found that Osmun met the "1990 diagnostic criteria for fibromyalgia syndrome identified by the American College of Rheumatology including the presence of multiple tender points[.]" (AR 348-49). Dr. Evans opined that Osmun would need to frequently avoid public contact; routine, repetitive tasks at a consistent pace; detailed or complicated tasks; strict deadlines; fast paced tasks; and exposure to work hazards. (AR 350). Dr. Evans opined that Osmun could not walk a block without rest or severe pain; sit for no more than 30 minutes at a time before standing; stand for no more than 10 minutes at a time; sit or stand less than two hours in an eight-hour workday; rarely lift less than 10 pounds and never lift more than 10 pounds; rarely twist or stoop; and required at least eight unscheduled breaks of 10 minutes each in an eight-hour workday. (AR 350-51). Dr. Evans concluded that Osmun's limitations were caused by "muscle weakness," "pain/paresthesia," "adverse effects of medication," and "fatigue." (AR 351). Dr. Evans estimated that Osmun's limitations would result in more than four absences from work per month. (AR 352).

However, between February 2012 and June 2014, neurologist Hamid Hamdi, M.D., examined Osmun and found several times that she had a stable gait and station several times, and found at least five times that she had normal muscle bulk, tone and strength. (AR 285, 289, 292, 295-96, 396). Additionally, in April 2014, a state agency consultative examiner, Venkata

Kancherla, M.D., observed that Osmun walked into the examining room without assistance; got on and off the examination table without assistance; had a normal gait and station; and had 5/5 muscle strength in all four extremities. (AR 344). However, Dr. Kancherla also reported that Osmun "had some difficulty walking on her heels, but [was] able to walk on her toes okay." (AR 344).

The ALJ found that Dr. Evans was a "treating source" under SSR 96-2, but nevertheless assigned her opinion "little weight." (AR 23). The ALJ stated that:

> The objective evidence does not support the significant limitations assigned by Dr. Evans. The claimant has been noted for a normal gait. She retains full strength in her extremities and the range of motion in her joints is within normal limits. Though the claimant testified that she occasionally drops items, there is no evidence that she has difficulties reaching, particularly with her right upper extremity. Further the claimant's activities of daily living do not support Dr. Evans' assessment. The claimant is able to attend school four days a week and is managing a full course load. Her degree requires her to stand for extended periods and to use her hands constantly. As the evidence is generally inconsistent with Dr. Evan's assessment, it is given little weight.

(AR 23 (internal citations omitted)).

It is the province of the ALJ to craft the RFC and to resolve conflicts in evidence when doing so. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). "The administrative law judge is not required or indeed permitted to accept medical evidence if it is refuted by other evidence— *which need not itself be medical in nature . . . ." Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009) (quoting *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995)).

At the same time, "[w]hen an ALJ denies benefits, he must build an accurate and logical bridge from the evidence to his conclusion, and he must may not 'play doctor' by using his own lay opinions to fill evidentiary gaps in the record." *Chase v. Astrue*, 458 F. App'x 553, 556-57

(7th Cir. 2012) (citations and internal quotation marks omitted). The ALJ must articulate which medical or treatment records "provide support for [his] opinion" and not leave the Court guessing "whether there is support for the RFC determination" or "fabricate [the RFC] out of whole cloth." *Betts v. Colvin*, No. 13-cv-6540, 2016 WL 1569414, at *3 (N.D. Ill. Apr. 19, 2016); *see Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("No doctor concluded that Larson's symptoms were just a response to situational stressors as opposed to evidence of depression. The ALJ's conclusion to the contrary thus finds no support in the record.").

Here, the ALJ's assignment of little weight to Dr. Evans's opinion is flawed. The ALJ erred in discrediting Dr. Evans's opinion based on Dr. Hamdi's and Dr. Kancherla's observations that Osmun has a normal gait and station, and that "[s]he retains full strength in her extremities and the range of motion in her joints is within normal limits." (AR 23). "[A] person with fibromyalgia may have 'muscle strength, sensory functions, and reflexes [that] are normal.'" *Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017) (second alteration in original) (quoting *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001)); *see Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1995) ("There are no laboratory tests for the presence or severity of fibromyalgia."); *Herrmann v. Berryhill*, No. 1:17-CV-56, 2017 WL 6523931, at *10 (N.D. Ind. Dec. 20, 2017) (same). "The ALJ's reliance on the purported 'conflicting' reports and the deficient objective medical evidence indicates a lack of understanding about the disease. *Buttaccio v. Berryhill*, No. 16 C 5447, 2017 WL 3895566, at *5 (N.D. Ill. Sept. 6, 2017). The ALJ's determination that Dr. Evans's opinion with regard to Osmun's limitations was inconsistent with her having full strength, a normal gait, and normal range of motion is not the result of "medical opinion evidence or authority. The ALJ evaluated the evidence of these physicians' examinations and came to [his] own lay, speculative conclusion." *Herrmann*, 2017

9

WL 6523931, at *11 (citing *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005)).

Moreover, Social Security Regulations require that an ALJ assign greater weight to a medical opinion evaluating the presence or severity of fibromyalgia if it is based on "longitudinal records reflecting ongoing medical evaluation and treatment . . . ." SSR 12-2P, 2012 WL 3104869, at *3 (July 25, 2012); *see Buttaccio*, 2017 WL 3895566, at *6 (citation omitted); 20 C.F.R. § 404.1527(c)(2). Here, Dr. Kancherla examined Osmun only once. On the other hand, Dr. Evans treated Osmun nine times between February 2012 and June 2013, and one to three times a month prior to that, which is enough to have obtained a longitudinal picture of Osmun's medical impairment. *See* 20 C.F.R. § 404.1527(c)(2) ("When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source."); *see, e.g., Rose v. Berryhill*, 256 F. Supp. 3d 1079, 1089-90 (C.D. Cal. 2017) (finding that treating the claimant seven times in an eight-month period was long enough for the doctor to obtain a longitudinal picture of the claimant's impairment); *Strbac v. Comm'r of Soc. Sec.*, No. 1:15-CV-01885, 2016 WL 5255066, at *13 (N.D. Ohio Aug. 3, 2016) (finding that a six-month treating relationship was sufficient).

To the extent that Dr. Hamdi may have had a longitudinal picture of Osmun's condition, he did not conduct any objective testing regarding Osmun's fibromyalgia symptoms. Therefore, Dr. Evan's opinion, which was based on "1990 diagnostic criteria for fibromyalgia syndrome identified by the American College of Rheumatology including the presence of multiple tender points" (AR 348), would typically be afforded more weight than Dr. Hamdi's with respect to the limitations of Osmun's fibromyalgia. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and

10

laboratory findings, the more weight we will give that medical opinion."); SSR 12-2P, 2012 WL 3104869, at *3 (requiring a finding of "[a]t least 11 positive tender points on physical examination" to medically determine that a claimant has fibromyalgia). Furthermore, Dr. Hamdi is a neurologist and was not treating Osmun's fibromyalgia. *See* 20 C.F.R. § 404.1527(c)(2)(ii) ("Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion.").

Next, the ALJ erred by determining that Dr. Evans's opinion was not credible in light of evidence of Osmun's daily activities. "[P]erforming simple tasks a few times a day does not translate into working full time." *Buttaccio*, 2017 WL 3895566, at *6 (citing *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013)). This is especially true "where '[t]he individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms.'" *Vandergraff v. Berryhill*, No. 4:17-CV-06-JEM, 2018 WL 1282293, at *4 (N.D. Ind. Mar. 13, 2018) (alteration in original) (quoting SSR 96-7p, 1996 WL 374186, at *8 (July 2, 1996)).

Here, the ALJ discussed Osmun's ability to carry out daily activities in the RFC assessment, including some of the special accommodation provided by her teachers at Ivy Tech Community College. (*See* AR 19-20). In discrediting Dr. Evans's opinion, the ALJ stated that Osmun's "daily activities do not support Dr. Evans' assessment. The claimant is able to attend school four days a week is managing a full course load. Her degree requires her to stand for extended periods of time and use her hands constantly." (AR 23). This assessment of Dr. Evans's opinion appears to ignore Osmun's testimony that her teachers provide her with special accommodations such as, sitting down as needed, allowing her to leave class when her hands shake so badly that she cannot manipulate objects, and excusing her on days when she cannot

11

attend class due to pain. (AR 47-49, 67, 70). The ALJ erred by failing to acknowledge Osmun's difficulties in these activities or the special accommodations provided by her teachers when assessing Dr. Evans's opinion.[3] *See Revels*, 874 F.3d at 664 ("[The ALJ] pointed to Revels' remark to Dr. Ruggeri that she was independent in daily activities, as well as Revels' testimony that she did various household tasks. However, the ALJ omitted highly relevant qualifications to this statement."); *Buttaccio*, 2017 WL 3895566, at *6 ("Thus, from what the Court can discern, the ALJ's assertion that Plaintiff had 'resumed physical activity' inaccurately summarizes, or at least overstates, the record evidence.").

Even more troubling, Osmun's testimony regarding her ability to perform daily activities or attend classes appears to largely corroborate Dr. Evans's report. For example, Dr. Evan's report is consistent with Osmun's testimony that she cannot sit in the same position for more than 15 minutes on a good day and 45 minutes on a bad day due to pain (*compare* AR 48-49, 69-70, *with* AR 350-51); cannot lift 10 pounds (*compare* AR 70, *with* AR 351); cannot frequently use her hands because she has a tendency to shake objects or drop them (*compare* AR 67, 70, *with* AR 351); and that her pain unexpectedly causes her to miss or leave class (*compare* AR 48-49, 58, 64, 67, *with* AR 352). Thus, the ALJ failed to articulate how evidence of Osmun's daily activities undermines Dr. Evans's report, leaving the Court to guess whether the ALJ's assessment of Dr. Evans's opinion is support by the record. *See Betts*, 2016 WL 1569414, at *3 (remanding the ALJ's decision where the ALJ failed to articulate which medical records

---

[3] Additionally, the ALJ discredited Dr. Evans's opinion that Osmun cannot use her arms for reaching overhead because Osmun completed a "Function Report" in February 2013, and did not indicate that her symptoms or conditions affect "reaching." (*See* AR 23 (citing AR 213)). However, the Function Report also indicates that Osmun's condition limits her ability to use her hands and lift. (AR 213). The ALJ did not address this discrepancy concerning Osmun's ability to "reach" for objects at the hearing, but instead surmised that Osmun's condition did not affect her ability to reach. *See, e.g., Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("Rather than addressing Punzio's comprehension skills directly, the ALJ instead surmised that her condition has improved over the years . . . ."). On remand, the ALJ should develop the record as to Osmun's ability to reach for objects.

provided support for the assigned RFC, leaving the court to guess where there was support for the RFC in the medical records or whether the ALJ "fabricated [the RFC] out of whole cloth"); *cf. Daniels v. Colvin*, No. 12 C 9317, 2014 WL 2158999, at *13 (N.D. Ill. May 23, 2014) (finding that "an ALJ's evaluation of a[n] applicant's credibility must be specific enough to make clear to [the court] how much weight the ALJ gave to the applicant's testimony and the reasons for that decision.'" (alterations in original) (quoting *Hill v. Astrue*, 295 F. App'x 77, 81 (7th Cir. 2008))).

The Commissioner argues that the ALJ properly assigned little weight to Dr. Evans's opinion because Dr. Evans's report contains internal consistencies. But the ALJ did not discuss any internal consistencies in his reasoning when discrediting Dr. Evans's opinion. It is well established that the Commissioner "may not advance an explanation that the [ALJ] never made himself and may not attempt to support the decision with evidence the [ALJ] apparently did not consider." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (citations omitted); *see Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010) ("[I]n defiance of the principle of *SEC v. Chenery Corp.*, 318, U.S. 80, 87-88 (1943), the government's lawyers who defend denials of disability benefits often rely heavily on evidence not (so far as appears) relied on by the administrative law judge, and defend the tactic by invoking an overbroad conception of harmless error." (collecting cases)). Therefore, a remand is warranted in this case so that the ALJ may properly consider the opinion of Dr. Evans in crafting the RFC.[4]

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is REVERSED, and

---

[4] Because the Court finds that remand is warranted due to the ALJ's flawed analysis of Dr. Evan's opinion in the RFC determination, the Court need not reach the remainder of Osmun's arguments.

the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order. The Clerk is directed to enter a judgment in favor of Osmun and against the Commissioner.

SO ORDERED.

Entered this 28th day of September 2018.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge